C. J. Carlton v. Commissioner.
Carlton v. Commissioner
Docket No. 17836.
United States Tax Court
1950 Tax Ct. Memo LEXIS 242; 9 T.C.M. (CCH) 237; T.C.M. (RIA) 50067; March 22, 1950
Doyle E. Carlton, Esq., and O. K. Reaves, Esq., First National Bank Bldg., Tampa, Fla., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's gift tax liability for 1944 in the amount of $12,539.26. The primary questions for decision are the proper values of the property transferred by gift, and the extent, if any, of the interest of petitioner's wife in some of the properties by reason of State law. An issue relating to the number of exclusions to which petitioner is entitled has been conceded by petitioner. Findings of Fact Petitioner, C. J. Carlton, married Mattie S. Carlton on March 8, 1905. They have five children. The gift tax returns in question were filed with the *243 collector for the district of Florida. On or about January 3, 1944, petitioner created five separate identical trusts for the benefit of his children, and transferred, by gift, to his wife as trustee equal interests in certain real and personal property. The five children were Ara C. Finley, Dale Carlton, Odell Carlton, Frieda C. Edwards, and Golda Carlton. Petitioner's wife joined in the conveyance of the properties. The properties which were the subject of these gifts were returned by petitioner at the values indicated, which values were determined by respondent, as follows: Value
Value De-
Property
Returned
termined
Foy Grove
$ 5,300.00
$ 5,300.00
Jenkins Grove
32,000.00
79,300.00
Home Grove
5,000.00
15,000.00
Whiddon Grove (1/2 int.)
9,000.00
19,200.00
Garage Property, Lots 1,
2, & N. 20feet L. 3, s/d L.
2, Blk. 35 Wauchula
1,500.00
10,000.00
Livestock
$25,000.00
$ 25,000.00
Cash
467.85
467.85
Misc. Personal Property: Tractor
1,475.00
1,475.00
Truck
240.00
240.00
Auto
475.00
475.00
Irrigation equipment
1,700.00
1,700.00
Fruit on trees
0
17,815.77
Error in return
1,500.00
0
Total Values
$83,657.85
$175,973.62
*244 The Jenkins property had been purchased in 1913 for $11,000. It comprised approximately 330 acres of which 80 acres were planted in groves containing 20-year old Valencia orange and 30-year old pineapple-orange trees, together with grapefruit and tangerine trees, and seedlings. Of the remaining acres, approximately 60 were cleared and 190 were not cleared. Located on the property was a four-room, one-story frame house, approximately fifty years old, a barn with a metal roof, and an irrigation system which was abandoned after the gifts in question. The fair market value of the Jenkins property, not including the fruit on the trees, as of the date of gift, was $72,000. The Home property comprised 12 acres improved by a 44-year old one-story frame house, a barn, two shelters, and a well for irrigation. It was located in the town of Wauchula, which has unusually high taxes. Grapefruit, Valencias and pineapple-oranges were grown on the property. The fair market value of this property, not including the fruit on the trees, as of the date of gift, was $11,000. The Whiddon [1] Grove property, about five miles from Wauchula, comprised 80 acres, of which 50 acres were groves containing *245 20 acres of 40-year old seedlings, 20 acres of 20-year old Buds, 8 acres of 8-year old Buds, and 2 acres of 2-year old Buds. The remaining thirty acres of this land were timbered property. The fair market value of the one-half interest transferred by petitioner, not including the fruit on the trees, as of the date of gift, was $19,000. The value of all grove properties fluctuated from 1939 to 1949, with the price of fruit. The value began rising after the entrance of the United States into the war. The Government started buying citrus fruit in the fall season of 1942. Prices "broke" in 1946 when the Government ceased buying citrus fruit. Not many sales were made of groves in the vicinity of those here in question at or near the time of the gifts in question. Lots 1 and 2 and 20 feet of Lot 3 in the town of Wauchula, known as the garage property, contained a corrugated iron garage which was old, dilapidated, and rusted. The property was uninsurable due to the proximity to two bulk gasoline storage tanks. It was rented as a gasoline station at a minimum rental of $50 a month, *246 plus 1 cent per gallon of sales exceeding the guaranteed amount. In only two months did the sales exceed the minimum of 5,000 gallons. The fair market value of this property, as of the date of gift, was $5,000. For the 1943-1944 season, the fruit harvested and sold from the Jenkins and Home Groves, after the deduction of picking, packing and hauling charges, resulted in net proceeds of $33,803.04. Because of climatic conditions, such as the risks of a freeze or drought, this would not be indicative of the fair market value of the fruit as of January 3, 1944. A practice exists in the area of using a discount factor of approximately 25% to the estimated net proceeds figure to arrive at a value for fruit on the trees. The fair market value of the fruit on the trees on January 3, 1944, was not less than $17,815.77. At the time of her marriage, petitioner's wife received a gift of cattle from her father which were sold for $1,800 in or around 1912. In 1920, she was given property which subsequently sold for $1,350. From 1922 to 1936, she received a total of $4,263 from her father's estate. These monies were deposited in a joint banking account in the name of petitioner and his wife, *247 upon which she still draws. She has no record of her withdrawals. She has always been engaged at home in the duties of a housewife, including rearing the five children. She has not engaged in any other employment. Petitioner owned $8,700 worth of property at marriage. From 1925 to 1943, he received $10,500 from his father's estate. The Jenkins Grove property was purchased by petitioner for $11,000; $6,000 of this amount was represented by two notes which were secured by a mortgage. His wife signed the two notes and the mortgage with her husband. She owned no interest in the gifts made January 3, 1944. Opinion KERN, Judge: The first issue concerns the value of certain citrus groves, together with the fruit on the trees, which were among the properties given to the trusts for petitioner's children. Upon a careful consideration of all the evidence in the case, we have concluded that the fair market values of the various properties as of the date of the gift are as indicated in our findings. Respondent has conceded, as indeed he should in the light of the testimony of his own expert witnesses, that the January 3, 1944, value of the properties was not as great as he determined in *248 his notice of deficiency. Even with this concession, there are still substantial differences between his valuation figures and those for which petitioner contends. It must be borne in mind that what we are called upon to determine is the value at the date of gift, and that this means "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell", upon a due consideration of "All relevant facts and elements of value as of the time of the gift * * *." (Reg. 108, Sec. 86.19). An application of such standards to the present record has led to the valuations which are set forth in our findings of fact. The problem has not been an easy one due to the great fluctuations in the value of such properties brought about by the war economy, and the fact that the date of gift was near a high point of value. Petitioner presented little, if any, direct evidence on the separate value of the fruit on the trees which was included in the gifts. Respondent's evidence on this item was substantial and has caused us to conclude that the fruit in question was worth not less than the amount determined by him. Petitioner *249 further urges that his wife owned an equitable interest of at least 20% in the real estate prior to January 3, 1944, which he contends arose from her marital rights and from the fact that she had provided part of the purchase price of the real estate from her separate property, and had contributed monies and labor in the joint improvement and accumulation of the real estate. We know, however, from the recent teachings of the Supreme Court of the United States in , that the value of the marital rights of a wife in Florida can not constitute "adequate and full consideration in money or money's worth" for gift tax purposes. In the course of the opinion, the Court observed that the parties admitted the law of Florida to be that a wife has an inchoate interest in all her husband's property, contingent during his life but absolute upon death. While the posture of the case was there different, in that the husband was purporting to make the transfer for a release of her marital rights, while here it is apparently urged that petitioner did not give 20% of the property transferred to his wife as trustee because to that extent the property was hers *250 under Florida law, we believe it requires us to hold that petitioner can not be sustained in this aspect of his case. Such cases as ; , wherein it is held that a wife has an equity arising out of her contributions and services to the marital community, which will be recognized in marital settlements, even though she was at fault and was therefore denied alimony, do not advance petitioner. Such a right has no standing except upon a declaration of it in an appropriate action affecting the marital status of the parties. If, on the other hand, petitioner is attempting to show that the property transferred was, in fact, the separate property of the wife dehors the marital relation, there is a failure of proof. For all we know, the contributions of the wife have been spent or remain in the bank account. These specific sums have not been traced to the gift, nor is the increase in wealth of the husband and wife shown to be attributable to the increment from this property or to her services, in an economic rather than a marital sense. Under the circumstances, *251 all the property in question must be deemed to have belonged to petitioner. Decision will be entered under Rule 50. Footnotes
1. In the transcript and pleadings this is sometimes spelled as "Whitten," "Whidden," and "Whiddon."↩